UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

REBECCA B.[1] O/B/O A.S.L.C.,

                                    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                                    Defendant.
_____

**DECISION AND ORDER**

6:22-cv-6492-JJM

        Plaintiff brings this action on behalf of her minor grandchild A.S.L.C. pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) to review the final determination of the Commissioner of Social Security that she was not disabled. Before the court are the parties' cross-motions for judgment on the pleadings [6, 7].[2] The parties have consented to my jurisdiction [10]. Having reviewed their submissions [6, 7, 8], the Commissioner's motion is granted, and plaintiff's motion is denied.

## BACKGROUND

        The parties' familiarity with the 701-page administrative record [5] is presumed. On March 10, 2020, plaintiff filed an application for Social Security Income on behalf of A.S.L.C., alleging disability as of January 1, 2015, due to static encephalopathy fetal alcohol spectrum disorder, gender dysphoria, disinhibited social engagement disorder, and anxiety.

---

[1]    In accordance with the guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Western District of New York on November 18, 2020 in order to better protect personal and medical information of non-governmental parties, this Decision and Order will identify the plaintiff by first name and last initial.

[2]    Bracketed references are to the CM/ECF docket entries. Page references to the administrative record are to the Bates numbering. All other page references are to the CM/ECF pagination.

Administrative Record [5] at 58, 130. Plaintiff's claim was denied initially, and again upon reconsideration. Id. at 58. At plaintiff's request, a hearing was conducted. Id.

A.    The Hearing

On August 13, 2021, Administrative Law Judge ("ALJ") Brian Kane conducted a telephonic hearing. Id. at 77-107. Plaintiff was represented by an attorney. Id. At the hearing, A.S.L.C. testified that she was working part-time helping with pony rides at Homesteads for Hope. Id. at 84. She also helped care for the chickens and other animals on her family's property. Id. at 85. She had just completed her freshman year of high school. Id. at 87. She attended class in a "regular" classroom but received extra help under a 504 plan. Id. at 88.[3] She would sometimes stutter or have trouble speaking due to her anxiety. Id. at 89. She would get distracted and forget to do things. Id. at 91-92. She sometimes needed help to understand instructions. Id. at 96. She was seeing a therapist at Genesee Behavioral Mental Health for anxiety and depression. Id. at 93-94. She took hydroxyzine for anxiety at bedtime. Id. at 99. She had several close friends and a boyfriend. Id. at 94.

ALJ Kane noted that he did not have records from Genesee Behavioral Mental Health. Id. at 100. A.S.L.C.'s attorney stated that they had requested those records, but did not have them yet. Id. ALJ Kane held open the record until August 21, 2021. Id. at 106.

B.    The ALJ's Decision

On November 26, 2021, ALJ Kane issued a Notice of Decision denying plaintiff's claim. Id. at 55-71. At step two of his decision, he found that A.S.L.C. had the severe impairments of attention deficit hyperactivity disorder ("ADHD") and depressive syndrome. Id.

---

[3]    A 504 plan, which gets its name from Section 504 of the Rehabilitation Act of 1973, provides supports so a student with a disability can learn alongside their peers in general education.

at 59. He found that her previous diagnoses of fetal alcohol syndrome and gender dysmorphia had stabilized, did not cause any significant limitations, and were thus nonsevere. Id.

At step three, ALJ Kane found that A.S.L.C. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments of 20 C.F.R. Part 404, Subpart P, Appx. 1 (the "Listings"). Id. at 60. In making that determination, he considered the "paragraph B" criteria and assessed A.S.L.C. with a mild limitation in understanding, remembering, or applying information; a moderate limitation in concentrating, persisting or maintaining pace; and no limitations in interacting with others or in adapting or managing oneself. Id. at 60-61.

ALJ Kane further found that A.S.L.C. did not have an impairment or combination of impairments that functionally equaled the severity of the Listings. He considered the six functional domains under 20 C.F.R. §§416.924(d) and 416.926(a), and found that A.S.L.C. had less than marked limitation in acquiring and using information; less than marked limitation in attending and completing tasks; no limitation in interacting and relating with others; no limitation in moving about and manipulating objects; no limitation in the ability to care for herself; and no limitation in health and physical well-being. Id. at 62.

Accordingly, ALJ Kane found that A.S.L.C. was not disabled. Id. at 71.

C.     Record Evidence Considered by the ALJ

In reaching his determination, ALJ Kane reviewed A.S.L.C.'s hearing testimony, primary care records, teacher questionnaires, and the medical opinions of Todd Deneen, Psy.D., Christie L. M. Petrenko, Ph.D., Catherine Goodfellow, M.D., Jeffery Snarr, Ph.D, and State Agency medical consultants B. Stouter, M.D., and G. Wang, M.D. Id. at 62-71.

In July 2020, Dr. Deneen performed a consultative examination of A.S.L.C. Id. at 412. At the exam, A.S.L.C. reported having sleep disturbances due to anxiety, being easily distractible, a past (but no present) history of suicidal ideation and self-harm, and that she experienced "random" anxiety, as well as anxiety and restlessness when asked to do something. Id. at 412-13. However, she reported getting along with others, as well as being able to care for herself, perform household tasks and recreational activities. Id. at 412-13, 415. Her mental status examination findings were unremarkable. Id. at 413-15. Dr. Deneen found that A.S.L.C. had no significant limitations with regards to attending to, following, and understanding age-appropriate directions, responding to changes and asking questions. Id. at 415. However, he assessed A.S.L.C. with mild limitations in sustaining concentration, completing age-appropriate tasks, adequately maintaining appropriate social behavior, learning in accordance with cognitive functioning, and interacting adequately with peers. Id. ALJ Kane found Dr. Deneen's opinion to be persuasive as being generally consistent with the treatment evidence. Id. at 67.

On April 30, 2021, primary care physician Dr. Goodfellow completed a checkbox medical statement indicating that A.S.L.C. had "extreme" difficulties in attending and completing tasks due to being "very scattered" and having problems focusing, as well as difficulty finishing the tasks she starts. Id. at 515. Dr. Goodfellow further opined that A.S.L.C. had moderate limitations in acquiring and using information, due to taking longer to process new information than compared to her peers, and in interacting and relating with others due to being very anxious in settings with others her own age and functioning better with adults in a one-on-one situation. Id. Dr. Goodfellow also assessed A.S.L.C. with moderate limitations in moving about and manipulating objects due to being "exceedingly clumsy" and in caring for herself because she still required prompts for selfcare and to show respect to others and their things. Id.

ALJ Kane found Dr. Goodfellow's opinion to be generally unpersuasive as being inconsistent with the medical record, except for A.S.L.C. having a moderate limitation in attending and completing tasks. Id. at 68.

On September 11, 2021, treating psychologist Dr. Snarr submitted checkbox medical statement indicating that he had previously diagnosed A.S.L.C. with social anxiety disorder and gender dysphoria, but he believed she no longer met the criteria for anxiety disorder. Id. at 551. To that end, he opined that A.S.L.C. had no limitations in any of the six functional domains, and that her gender dysphoria would improve once she left her "toxic" home environment. Id. at 552. ALJ Kane found Dr. Snarr's opinion persuasive as to the stability of A.S.L.C.'s anxiety as being consistent with the record. Id. at 69.

D.     **Appeals Council**

Plaintiff submitted a request to review ALJ Kane's Decision to the Appeals Council as well as additional treatment records from Dr. Snarr and Genesee Behavioral Mental Health Center. Id. at 1-2. The Appeals Council denied the request, finding that the newly submitted evidence "does not show a reasonable probability that it would change the outcome of the decision". Id. at 2. The Appeals Council also rejected records concerning A.S.L.C.'s treatment after the November 26, 2021 hearing as unrelated to the relevant period. Id. at 2.

**ANALYSIS**

Plaintiff argues that: (1) ALJ Kane failed to evaluate A.S.L.C.'s anxiety disorder at steps two and three; (2) ALJ Kane's assessment of A.S.L.C.'s ability to care for herself is not supported by substantial evidence; and (3) the Appeals Council improperly rejected new and material evidence. Plaintiff's Memorandum of Law ("MOL") [6-1] at 1.

A.   **Standard of Review**

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42 U.S.C. §405(g)). Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York, Inc. v. NLRB, 305 U.S. 197, 229 (1938); *see also* Biestek v. Berryhill, 587 U.S. 97, 103 (2019); Colgan v. Kijakazi, 22 F.4th 353, 359 (2d Cir. 2022) ("[a]lthough . . . the evidentiary threshold for the substantial evidence standard 'is not high,' . . . the substantial evidence standard is also not merely hortatory: It requires relevant evidence which would lead a 'reasonable mind' to concur in the ALJ's factual determinations").

In determining the disability of children, a three-step sequential analysis is used. *See* 20 CFR §416.924; Melissa C. o/b/o M.C. v. Kijakazi, 2022 WL 167534, *1 (W.D.N.Y. 2022). Step one requires the ALJ to determine whether the child has engaged in substantial gainful activity. *See* id. Step two requires a determination of whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act. *See* id. At step three, the ALJ examines whether the claimant's impairment meets or equals the criteria of a listed impairment. *See* id.

Equivalence to a Listing can be either medical or functional. *See* §416.924(d); Tonya B. o/b/o A.M.C. v. Commissioner of Social Security, 2022 WL 4616971, *2 (N.D.N.Y. 2022). Functional equivalence requires a consideration of how the child functions in six sets of activities called "domains". *See* §416.926a(b); Tonya B., 2022 WL 4616971 at *2. Functional equivalence is established upon a finding of an "extreme" limitation in one domain, or "marked

limitations" in two domains. 20 C.F.R. §416.926a(a). "[T]he burden of proof rests on the claimant at each of the three steps." Brown o/b/o C.M.B. v. Colvin, 2014 WL 7272964, *3 (W.D.N.Y. 2014); *see generally* Talavera v. Astrue, 697 F.3d 145, 151 (2d. Cir. 2012).

**B.    Step Two and Three evaluation of anxiety disorder**

At step two, the ALJ must determine whether the claimant has an impairment, or combination of impairments, that is "severe". 20 C.F.R. §416.924(a). A severe impairment is one that causes "more than minimal functional limitations". §416.924(c); *see* Jennifer F. o/b/o M.C.W. v. Commissioner of Social Security, 2022 WL 600841, *1 (W.D.N.Y. 2022). The severity standard "is *de minimis* and is intended only to screen out the very weakest cases". McIntyre v. Colvin, 758 F.3d 146, 151 (2d Cir. 2014). "However, despite this lenient standard, the 'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, by itself, sufficient to render a condition 'severe'". Ciara B. v. Commissioner of Social Security, 610 F. Supp. 3d 515, 520 (W.D.N.Y. 2022) (citations omitted).

Here, A.S.L.C. claimed anxiety as a disabling condition in her initial application. [5] at 130. At the hearing, she testified that she had anxiety, was receiving therapy for anxiety, and was taking medication for anxiety. Id. at 89, 93-94, 99. She also reported having anxiety to her treating providers (*see* id. at 424, 430) and the consultative examiner (id. at 412-13) and was diagnosed with anxiety disorder by both. Id. at 415, 514-15. While none of these circumstances, by themselves or together, necessitate a finding that her anxiety was a severe impairment, it does call into question why ALJ Kane declined to even discuss the condition at step two, particularly where he discussed the other conditions he considered and determined to be nonsevere. Id. at 59 (discussing fetal alcohol syndrome and gender dysmorphia). Indeed, as the ALJ is required to

consider all impairments about which he "receive[s] evidence" (20 C.F.R. §404.1512(a)(1)), his failure to assess a diagnosed impairment at step two is legal error. See Bradley o/b/o C.B. v. Berryhill, 2017 WL 8287642, *2 (W.D.N.Y. 2017).

Nonetheless, such error is harmless if the ALJ's analysis at subsequent steps reveals that he sufficiently considered the omitted condition. See Reices-Colon v. Astrue, 523 F. App'x 796, 798 (2d Cir. 2013) (Summary Order) ("in those subsequent steps, the ALJ specifically considered [claimant's] anxiety and panic attacks. Because these conditions were considered during the subsequent steps, any error was harmless"). More generally, "[a]n ALJ does not have to state on the record every reason justifying a decision." Brault v. Social Security Administration Commissioner, 683 F.3d 443, 448 (2d Cir. 2012). Rather, the courts "conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied". McIntyre v. Colvin, 758 F.3d 146, 149 (2d Cir. 2014).

ALJ Kane did discuss A.S.L.C.'s anxiety and related treatment at various points in his step three analysis. He recounted A.S.L.C.'s testimony that she had recently begun treating with a therapist for anxiety and depression. Id. at 63. He noted that, in June 2019, she reported to Dr. Goodfellow having suicidal thoughts with no plan or intent, as well as anxiety, poor ability to concentrate, poor energy, and depressed mood. Id. at 64. He noted that Dr. Goodfellow "recommended several medications", including escitalopram for daily use and hydroxyzine for sleep. Id. at 64; see id. at 431 (prescribing such medications). He recounted A.S.L.C.'s June 2020 consultative exam, in which she reported to Dr. Deneen having sleep disturbances due to anxiety as well as "random anxiety" and restlessness when asked to do something. Id. at 65. As further noted, she continued to complain of anxiety to Dr. Goodfellow in July, though she admitted not

taking her medication and that she preferred not to. Id. at 65, 424. Dr. Goodfellow advised her to follow up with Dr. Snarr on this issue as well as her compulsive behaviors. Id. at 65-66, 425.

ALJ Kane gave particular weight to Dr. Snarr's September 11, 2021 opinion, in which he rescinded his previous diagnosis of anxiety disorder, and stated that she no longer met the criteria for such conditions and was "not psychologically disabled". Id. at 68, 551 (emphasis in original). ALJ Kane concluded that "[t]he evidence supports Dr. Snarr's opinion as there is no evidence of an anxiety order". Id. at 69. He found this conclusion to be supported by the longitudinal record, observing that, among other things, A.S.L.C. had responded well to treatment, was looking forward to the new school year, participating in sports, and enjoyed working for Homestead for Hope. Id. at 69. I note that A.S.L.C. did continue to treat with licensed master social worker ("LMSW") Shannon Sullivan and Zaid Saeed, D.O., for alleged anxiety, mood swings, panic attacks, sleep issues, stress, and severe social anxiety. Id. at 28-45. However, those records were not before ALJ Kane when he made his decision.

Thus, despite ALJ Kane's failure to discuss A.S.L.C.'s anxiety disorder at step two, it is clear from his findings at step three that he did consider the condition. Reading the ALJ's decision as a whole, as a reviewing court is tasked to do, ALJ Kane adopted Dr. Snarr's opinion that A.S.L.C.'s anxiety disorder had resolved to the point that it did not cause any functional limitations. The opinion of a treating psychologist regarding a mental condition is plainly substantial evidence upon which an ALJ can rely. See Siham H. v. Kijakazi, 2022 WL 4465462, *5 (N.D.N.Y. 2022) ("[a]lthough 'ALJs are no longer directed to afford controlling weight to treating source opinions . . . the regulations still recognize the 'foundational nature' of

the observations of treating sources,' particularly in cases involving mental health") (citations omitted).

While there is room for debate as to whether there was indeed "no evidence of an anxiety disorder" or that such disorder had resolved, that is not the proper inquiry on appeal. On appeal, "[t]he relevant inquiry is whether the ALJ applied the correct legal standards and whether [the ALJ's] determination is supported by substantial evidence". Cichocki, 729 F.3d at 177. Ultimately, "[t]he ALJ was well within his duty to reconcile the conflicting evidence and determine that the plaintiff's impairments, or combination of impairments, did not meet or equal a listing". Richard B. v. Commissioner of Social Security, 2021 WL 4316908, *6 (W.D.N.Y. 2021). "It is not the Court's role to reweigh the evidence supporting the ALJ's contrary determination." Angelo Michael G. v. Kijakazi, 2023 WL 4763792, *6 (N.D.N.Y. 2023); see Cage v. Commissioner of Social Security, 692 F.3d 118, 122 (2d Cir. 2012) ("we defer to the Commissioner's resolution of conflicting evidence."). The substantial evidence standard is "a very deferential standard of review - even more so than the 'clearly erroneous' standard," and the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would have to conclude otherwise". Brault, 683 F.3d at 448.

In any event, plaintiff does not suggest what additional limitations would be required if A.S.L.C.'s anxiety disorder had been considered a severe impairment. To show functional equivalence to a Listing, a child claimant must have an "extreme" limitation in one functional domain, or "marked limitations" in two domains. 20 C.F.R. §416.926a(a). Plaintiff bears the burden of proof in this regard. See Brown o/b/o C.M.B., 2014 WL 7272964 at *3. While there is evidence in the record that A.S.L.C.'s anxiety caused some limitations in the domain of interacting and relating with others, there is no evidence that such limitations were

more than moderate. See [5] at 515 (Dr. Goodfellow's opinion). As a less-than-marked limitation cannot support a finding of disability for a child claimant, there is no reason for remand. See Barry v. Colvin, 606 F. App'x 621, 622 (2d Cir. 2015) (Summary Order) ("[a] lack of supporting evidence on a matter for which the claimant bears the burden of proof, particularly when coupled with other inconsistent record evidence, can constitute substantial evidence supporting a denial of benefits."); Zabala v. Astrue, 595 F.3d 402, 409 (2d Cir. 2010) ("[r]emand is unnecessary . . . 'where application of the correct legal standard could lead to only one conclusion'") (citation omitted).

C.   **Ability to care for oneself**

In the domain of caring for yourself, "[the Commissioner] consider[s] how well [claimants] maintain a healthy emotional and physical state, including how well [they] get [their] physical and emotional wants and needs met in appropriate ways; how [they] cope with stress and changes in [their] environment; and whether [they] take care of [their] own health, possessions, and living area". 20 C.F.R. §416.926a(k). Among several examples of limited functioning in this domain, the regulation lists: "(i) You continue to place non-nutritive or inedible objects in your mouth . . . (iv) You engage in self-injurious behavior (*e.g.*, suicidal thoughts or actions, self-inflicted injury, or refusal to take your medication)." §416.926a(k)(3). However, "the[se] examples do not necessarily describe a 'marked' or 'extreme' limitation". Id.

As plaintiff points out, there was some evidence in the record that A.S.L.C. had engaged in both compulsive consumption and self-harm. See [6-1] at 10-12; [5] at 109, 120, 121, 473, 479. To that end, ALJ Kane expressly addressed A.S.L.C.'s hospitalization for suicidal threats and her reported historical self-harm, and found that her condition had stabilized through ongoing therapy. Id. at 63-34. ALJ Kane relied on the psychiatric opinions of Dr. Deneen and

-11-

Dr. Snarr, who assessed A.S.L.C. as being able to care for herself, perform household tasks and recreational activities, and as having unremarkable mental status examination findings. Id. at 413-15. Neither assessed her with any limitations in the category of self-care. Id. at 415, 552. He also cited to teacher questionnaires indicating that A.S.L.C. was capable of regulating emotions, controlling behavior, maintaining well-being by adapting to changes, maintaining personal hygiene, and being aware of and able to avoid hazards. Id. at 61.

While there is also evidence that cuts in favor of plaintiff's claim, there is ample evidence supporting ALJ Kane's determination, and the court is prohibited from reweighing the evidence on appeal. See Krull v. Colvin, 669 F. App'x 31, 32 (2d Cir. 2016) ("Krull's disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it"). In any event, there is no evidence in the record that A.S.L.C.'s limitations in the functional domain of self-care were more than moderate. See [5] at 515 (Dr. Goodfellow's opinion). As such, there is no basis for remand. See Barry v. Colvin, 606 F. App'x at 622; Zabala v. Astrue, 595 F.3d at 409.

D.  **The Appeals Council and later submitted evidence**

The Appeals Council "will review a case at a party's request or on its own motion if . . . the Appeals Council receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision". 20 C.F.R. §416.1570(a)(5). "The concept of materiality requires . . . a reasonable possibility that the new evidence would have influenced the [ALJ] to decide claimant's application differently." Pollard v. Halter, 377 F.3d 183, 193 (2d Cir. 2004); see Rutkowski v. Astrue, 368 F. App'x 226, 229 (2d Cir. 2010)

(Summary Order) (affirming the Appeals Council where the new evidence "d[id] not add so much as to make the ALJ's decision contrary to the weight of the evidence").

Plaintiff argues that the Appeals Council improperly rejected new and material evidence, specifically A.S.L.C.'s records from Genesee Behavioral Mental Health Center regarding her treatment for anxiety. [6-1] at 7-8. As plaintiff suggests, those records tend to indicate that A.S.L.C. had continued to seek mental health treatment after the issuance of Dr. Snarr's opinion, which could potentially undermine his conclusion that her anxiety disorder had resolved. However, the Appeals Council found that the new evidence "does not show a reasonable probability that it would change the outcome of the decision". [5] at 2.

The operative question for the Appeals Council is whether the additional evidence would likely change the outcome of the decision. *See* §416.1570(a)(5). For the reasons discussed above, I agree that it does not. Even with the new evidence, there is no evidence in the record that A.S.L.C.'s anxiety caused any more than moderate limitations. *See* [5] at 515. Thus, there is no reason for remand. *See* Barry v. Colvin, 606 F. App'x at 622; Zabala v. Astrue, 595 F.3d at 409.

## CONCLUSION

For these reasons, the Commissioner's motion for judgment on the pleadings [7] is granted, and plaintiff's motion [6] is denied.

**SO ORDERED**.

Dated: September 29, 2025

/s/ Jeremiah J. McCarthy
JEREMIAH J. McCARTHY
United States Magistrate Judge